5. The plea that Michael Gannon assigned his share to James Gettys before the commencement of this suit, is no answer to the complainant's equity. The assignee must take it cum onere. The assignment was made after Gannon's default, by which the complainant's equity accrued. I think the plea should be overruled.

6. The demurrer of the commissioners is only to so much of the bill as seeks relief against them. The bill seeks no relief against them, except an injunction to stay the money and bonds in their hands until the further order of the court. But they have the funds and must account for them. This demurrer, therefore, must be overruled, and they should answer to the amount of money and bonds in their hands, in case the court should order the money to be invested in securities for the benefit of the married women.

I think the demurrer, to so much of the bill as seeks to have the complainant's share set apart and laid out in productive securities for her separate use, must be overruled.

MORSELL, Circuit Judge, concurred.

The cause was afterwards set for final hearing, and the court decreed according to the above opinion.

SHAW (SMITH v.). See Case No. 13,107.

## Case No. 12,725.

SHAW v. The THOMAS COLLIER.

[See Case No. 12,718.]

## Case No. 12,726.

SHAW v. THOMPSON et al.

[Olc. 144.] 1

District Court, S. D. New York. June, 1845.

CHARTER PARTY — CONSIGNEE — PRESUMPTION OF KNOWLEDGE — FREIGHT MONEY — NUDUM PACTUM—COSTS.

1. A consignee of a charterer, and dealing with him in that character. must be presumed to know the contents of the charter-party.
[Cited in Hatch v. Tucker, 12 R. I. 505.]

2. He cannot deal with the charterer as owner for the voyage, when by the charter-party the entire possession and control of the vessel remains with the master and owner.

3. If the consignee, in such case, credits the freight on the consignment to him, on debts owing him by the charterer. he will not thereby acquit himself of liability to the master therefor.

4. The payment to the charterer will be on the responsibility of the charterer. and not on that of the vessel or her owner.

5. The master. notwithstanding any interference or direction of the charterer. has a right to retain the goods until his lien shall be satisfied, and he may sue the consignees after delivery to them of the goods. and recover the

1 [Reported by Edward R. Olcott, Esq.]
21 FED. CAS.—76

freight, at least to the amount due on the charter-party.

6. Where the consignee has notice that freight must be paid to the master and not to the charterer, it imposes the like obligation upon him as if so reserved in the bill of lading.

7. A consignee has no right to appropriate moneys due for freight to satisfy advances made by him to the charterer, although the bill of lading directs the freight to be paid to the consignee. But a direction to the consignee by the master, to pay a sum out of the freights to the charterer, will be equivalent to payment to the master.

8. An agreement by the master to pay a debt of the charterer to the consignee. without any consideration, is a nudum pactum, and void.

9. A receipt, alleged to be given through mistake, may be explained by parol evidence.

10. A libellant who demands an entire sum, when part of it has been paid according to his directions, and compels the respondent to defend, impairs his equity to costs in a court of admiralty.

11. A respondent who contests the entire demand of a libellant. when a portion of it is justly claimed, although he defeats the suit in the main matters in contestation, loses his equity to costs.

12. Admiralty courts, in adjudging costs in their discretion, regard the essential merits and equities of the parties rather than the result of the litigation.
[Cited in brief in Lubker v. The A. H. Quinby, Case No. 8,586.]

13. They may withhold costs from both parties when neither proposes to do what is substantially just between them without litigation.
[Cited in The Sarah Harris, Case No. 12,346.]

This action was instituted in personam against the respondents, to recover the sum of three hundred and fifty dollars, claimed to be due for freight on a cargo shipped at St. Jago de Cuba, and consigned and delivered to them. The respondents [Jonathan Thompson and others] deny all liability or indebtedness to the libellant [Charles H. Shaw] therefor, and aver that they have paid the whole amount of freight to the charterer of the vessel, with the assent of the libellant. The libellant being master and part owner of the schooner North Star, chartered her to Stearns, for a voyage to St. Jago de Cuba, from New-York and back, at $300 per month. the charterer to pay domestic and foreign port charges. The vessel performed the voyage out and returned to the port of New-York. March 7, 1845, with goods consigned to the respondents, for which $350 freight was payable. The bill of lading contained the singular statement that the $350 freight was "payable to Messrs. Thompson & Adams," who were the consignees. and are the respondents in this action. On the arrival of the vessel, notice was given to the respondents that freight must be paid the master or owner. and the goods were delivered them under that notice. The charterer (Stearns) was insolvent, and it was proved he was then indebted on the charter-party more than the amount of the freight payable on that shipment. There was due the respondents from the charterer, for advances made him upon the out-